# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLORADO

Civil Action No.

MARALEE MCLEAN

Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA

And CONTINENTAL AIRLINES, INC., AGCBP

Defendants.

_____

## COMPLAINT
_____

Comes now the Plaintiff, Maralee McLean, by and through her undersigned counsel, Robert W. Turner of Turner Roepke and Mueller, LLC and Zachary P. Mugge of Antero Law, LLC, and hereby submits this Complaint against Defendants Unum Life Insurance Company of America ("UNUM") and Continental Airlines, Inc., AGCBP, and states as follows:

### I. PARTIES

1. Plaintiff Maralee McLean ("Ms. McLean" or "Plaintiff"), is a citizen and resident of the State of Colorado and resides at 3571 South Uravan Street, Aurora, Colorado 80013.

2. Defendant UNUM is a Delaware corporation with its principal place of business at 2211 Congress Street, Portland, Maine.

3. Defendant Continental Airlines, Inc. AGCBP (hereafter "Continental") upon information and belief was the Plan Administrator which initially administering the Plan and was the named fiduciary of the Plan with authority to delegate its duties.

4. Upon information and belief, at some point in time between the onset of disability of the Plaintiff and the present time, Continental delegated its fiduciary responsibilities under the Plan to UNUM or an additional 3rd party presently unknown and unidentified.

## II. JURISDICTION AND VENUE

5. Defendant UNUM provided disability insurance through an employee benefit plan that is subject to the Employee Retirement Income Security Act, 29 U.S.C. Section 1132 (a)(1)(B)(1994) and 1132(a)(3).

6. Upon information and belief, the Plan Administrator of the Plan is presently UNUM to whom the fiduciary responsibilities of Continental were delegated at some point in time.

7. Upon information and belief, the agent for service of legal process on the Plan is UNUM the Plan Administrator or if not delegated to UNUM by Continental the agent is Continental.

8. This is an action for breach of contract for UNUM having terminated the Plaintiff's rights to receive continuing payment of her benefits pursuant to the terms of the Plan, effective as of August 21, 2015 under 29 U.S.C. Section 1132(a)(1)(B) and this Court has jurisdiction to determine the Plaintiff's rights under the Plan.

9. This is also an action for breach of fiduciary duty against UNUM or Continental for its actions in terminating the disability benefits of the Plaintiff.

10. The Defendant Plan Administrator, be it UNUM, Continental or an additional administrator who was delegated the fiduciary responsibilities under the Plan by Continental, is a fiduciary within the meaning of 29 U.S. C. section 1001 et. seq. specifically 29 U.S.C. section 1002(21)(A) and is subject to the duties and liabilities set forth in 29 U.S.C. sections 1104,11205 and 1109.

11. Venue is proper pursuant to 29 U.S.C. Section 1132(e) (2) because the breach took place in Colorado and the Defendants may be found in Colorado.

### III. GENERAL ALLEGATIONS

12. The Plaintiff was a flight attendant employee with Continental Airlines, Inc. ("Continental") from October, 1976 until April 29, 2004. As an employee with Continental the Plaintiff was enrolled in a Plan for long term disability ("LTD") coverage which was Plan # 530.

13. As of April 28, 2004, the LTD Plan in which the Plaintiff was enrolled was a Plan issued by UNUM and the Plaintiff was fully enrolled and a named participant in that Plan.

14. On April 29, 2004 the Plaintiff underwent surgery for scar revision of a previous ventral hernia surgery and additional cosmetic surgery with Dr. Randall Robinson.

15. As the result of complications during that surgery, the Plaintiff suffered extensive and permanent brachial plexus nerve damage to her arm and shoulder, neuropathic pain in her shoulder, arm, back and hand, and has endured emotional distress with concomitant fatigue, anxiety, depression and PTSD, along with other ongoing physical and emotional problems that have extended through the present time.

### UNUM MAKES AN INITIAL DECISION TO AWARD THE PLAINTIFF LTD BENEFITS

16.     As a result of her injuries sustained in the surgery on April 29, 2004, the Plaintiff was no longer able to perform the functions of her job as a flight attendant and filed an application on August 23, 2004 with UNUM for long term disability benefits under the terms and conditions of her LTD policy.

In pertinent part the provisions of the LTD policy state that "you are disabled when UNUM determines that:

- *You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and*
- *You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury…"*

17.     Supporting the initial application for LTD benefits was the medical report of the Plaintiff's primary treating physician, Dr. Garrett Shemesh, who agreed that the Plaintiff could not return to her employment with Continental as a flight attendant.

18.     UNUM acknowledged receipt of the Plaintiff's application for LTD benefits by letter of September 9, 2004 and advised the Plaintiff of the information that it needed in order to process the claim and render a determination as to the Plaintiff's entitlement to benefits.

19.     The Plaintiff supplied the information requested by UNUM and by letter of October 14, 2004, UNUM advised the Plaintiff that she had been found entitled to LTD benefits under the policy and was awarded $2,509.01 per month commencing as of August 27, 2004 and continuing until such time as she was no longer disabled under the terms of the LTD policy.

20.     Thereafter, UNUM continued to monitor the Plaintiff's entitlement to ongoing disability benefits under the terms of the policy.  UNUM requested supplemental information from

both the Plaintiff and Dr. Shemesh in March of 2005, as well as requesting the information from Dr. Robinson regarding the surgery and complications from the surgery of April 29, 2004.

21. Upon review by UNUM dated June 30, 2006, the vocational counselor for UNUM, Mr. Kenneth Maxwell, found that "based upon my review of the current vocational/medical information available, although the claimant has transferable skills portable to other sedentary to light occupations, these identified occupations do not meet the gainful definition as defined in voc request section ($14.48 per hour). Extensive research was conducted in the labor markets of Aurora and Denver, CO (MSA)."

22. By letter of August 7, 2006, UNUM advised the Plaintiff that she was entitled to ongoing LTD benefits.

### UNUM REVIEWS THE PLAINTIFF'S ENTITLEMENT TO ONGOING LTD BENEFITS AFTER 24 MONTHS

23. As part of the coverage under the policy, the definition of disability, Disability after 24 months is defined as:

- *UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.*

24. As at the 24 month of ongoing entitlement to benefits, the Plaintiff's claim was subject to a different definition of disability with different review procedures within UNUM, the Plaintiff's claim was transferred to a different claims adjuster with UNUM, Ms. Christine Howard.

25. Relying upon the vocational assessment of the Plaintiff by Mr. Maxwell, UNUM found that the Plaintiff did not have transferable skills to another line of gainful activity and was entitled to ongoing benefits.

26. As Mr. Maxwell had found that the Plaintiff was still disabled under the 24 month definition of disability, nevertheless UNUM continued to monitor and evaluate the Plaintiff's claim for ongoing benefits on a periodic basis.

27. UNUM asked for updated information on March 21, 2008 and sent the Plaintiff a Questionnaire to be completed which the Plaintiff completed and returned.  This Questionnaire was received by UNUM on April 23, 2008.  Plaintiff at that time advised that she was volunteering at Children's Hospital and at a Child's Advocacy Center.  At all times throughout the pendency of her disability entitlement, the Plaintiff advised UNUM of her involvement in child advocacy for abused children.

28. As the Plaintiff had worked consistently from the time she graduated from college and had been a 28 year employee of Continental, despite her physical injuries and emotional problems, started applying for jobs that she thought she may be able to perform that were within the physical restrictions and limitations put on her by her treating doctor, Dr. Shemesh.

29. By September of 2008, she had finally secured an interview to attempt to return to work in sales making $11.00 per hour plus commission at Nordstrom's department store for the holiday season.  The Plaintiff had attempted to be assisted by the State vocational rehabilitation services but they had not been successful.

30. UNUM offered to refer her file to vocational evaluation for a file review and vocational assistance upon being advised of the Plaintiff's attempts to return to some type of employment.

31. The Plaintiff's file was referred for vocational evaluation by UNUM. As the LTD policy had a vocational rehabilitation component to it, UNUM agreed to supply vocational assistance to the Plaintiff in an effort to return the Plaintiff to gainful employment.

32. The Plaintiff did obtain a sales commission job over the 2008 holiday season with Nordstrom's. She started in a training position for Nordstrom's on September 26, 2008 full time and then went to part time in December of 2008.

33. The Plaintiff was having a difficult time performing the job activities at Nordstrom's and the Plaintiff advised UNUM on March 10, 2009 that she was going to be unable to continue the part time position much longer as her pain had increased and she had recently had a cortisone injection to help to alleviate the pain. Based upon that information UNUM closed its vocational rehabilitation file at that time.

34. During this period of time that the Plaintiff was able to work for Nordstrom's on a commission basis, UNUM continued to pay the Plaintiff her LTD benefits based upon the formula set up in the policy, as UNUM agreed that this employment for the Plaintiff was not gainful under the terms of the policy, even though the return to employment was more than 24 months from the date of initial entitlement.

35. Upon termination of her part time employment UNUM put the Plaintiff back on full LTD benefits under the policy and continued to monitor her disability status.

36. As of January of 2010, UNUM began evaluating the Plaintiff's claim for the possibility of a potential settlement as the Plaintiff's benefits under the policy were payable to age 65. As of January of 2010, the present value of the future benefits was $219,515.43. UNUM

offered the Plaintiff settlement at 65% of present day value and the Plaintiff refused. At that time, the Plaintiff's claim was placed in a yearly review status by UNUM.

37. Between December of 2010 and September of 2012, UNUM continued to pay the Plaintiff her ongoing LTD benefits and investigated whether the Plaintiff could receive any additional workers compensation benefits as a result of her 2003 injury as the UNUM policy contained an offset provision for payments received from other sources including workers compensation.

38. UNUM contacted the Plaintiff on September 25, 2012 asking for an update on her medical status.

39. By report of Dr. Shemesh of November 1, 2012, Dr. Shemesh continued to state the same restrictions on the Plaintiff's use of her left upper extremity as he had since the onset of the Plaintiff's disability and advised that the Plaintiff's condition would not improve.

40. By letter of July 15, 2013, UNUM advised the Plaintiff that there had been an overpayment of disability benefits by them totaling $6,807.32 as a result of settlement of the Plaintiff's workers compensation claim.

41. As the only source of income the Plaintiff had was her receipt of LTD benefits, UNUM agreed on July 25, 2013 to spread out the reimbursement of overpayment over 36 months at $190.00 per month. The Plaintiff, being concerned about having her monthly benefits for disability reduced, borrowed the money to pay back the overpayment. The Plaintiff paid the overpayment off in its entirety on August 5, 2013 and the full payment of monthly benefits to the Plaintiff was resumed by UNUM.

42. The Plaintiff's claim was reevaluated on December 10, 2013 for an annual review by UNUM of the Plaintiff's ongoing entitlement to disability benefits. Based upon that review the determination was made by UNUM to continue the Plaintiff on LTD benefits and to reevaluate the claim in one year.

43. Additionally with the resolution of the workers compensation matter, UNUM resumed its evaluation for potential settlement of its future liability to the Plaintiff to determine if a settlement was feasible. The present day value of the future benefits for which UNUM would be liable as of January of 2014 as calculated by UNUM was $132,945.97.

## UNUM MAKES A SETTLEMENT OFFER TO PLAINTIFF TO SETTLE OUT HER RIGHTS TO FUTURE LTD BENEFITS

44. Ms. Judith Vigne a "commutation communication specialist" for UNUM contacted the Plaintiff on January 17, 2014. An offer to commute the future benefits payable to the Plaintiff was made for $93,062.00 which was, according to Ms. Vigne, 70% of the present day value of the future benefits payable to the Plaintiff until she reached the age of 65 when the monthly benefits would terminate. The Plaintiff advised Ms. Vigne that she was single and could barely make ends meet with the payments she was receiving.

45. The amount of the lump sum offer was actually 70% of the reduced monthly amount of $2,461.73 as UNUM failed to take into consideration that the overpayment due to the lump sum settlement of the workers compensation claim had been repaid in full on August 5, 2013.

46. At the time the settlement offer was made on January 17, 2014, UNUM determined that:

*"In review of the information contained in the file at the time of this review, it appears the claim is appropriate for settlement consideration based on the fact that there have been no changes*

*from a medical, vocational, financial and/or contractual perspective that would impact our liability….*

*Based upon DX of left brachial plexopathy with weakness and stiffness, R&Ls of no lifting or overhead use of left arm/shoulder, no improvement expected from RT in 2012 no change would be expected, occ of flight attendant since 1976, reasonable to support ongoing disability."*

47. After the Plaintiff declined the offer of settlement the claim was once more put on a one year calendar for evaluation and review.

### UNUM BEGINS PROCESS TO BUILD A CASE TO TERMINATE THE PLAINTIFF'S LTD BENEFITS

48. On December 10, 2014, UNUM once more sent the Plaintiff their standard forms to fill out to verify the Plaintiff's ongoing disability.

49. As of December of 2014, since the Plaintiff had attempted work in 2008-2009, the Plaintiff had applied for over 100 jobs either on a full time or part time basis to see if there was anything that she could do on a gainful basis that existed without success.

50. At that time the Plaintiff inquired as to whether or not UNUM could provide financial assistance with her so she could go to law school as she desired to see if she could do more to advocate for children who were victims of sexual abuse.

51. The claims adjuster for UNUM, Ms. Page Townsend told the Plaintiff that she would check and get back to her. Ms. Townsend did a Google search of the Plaintiff which disclosed that the Plaintiff had indeed authored a book entitled "Prosecuted but Not Silenced."

52. Despite the fact that the book had been written before the onset of disability and despite UNUM having been made fully aware of the Plaintiff's attempts at volunteer work for sexually abused children, based upon Ms. Townsend's limited Google search, UNUM determined that clarification of the Plaintiff's functional capacity was needed.

53. Rather than sending the Plaintiff out for a Functional Capacity Evaluation or an independent medical examination or doing a face to face evaluation by a nurse, UNUM performed a social media search, had surveillance performed and had a face to face interview with the Plaintiff with a UNUM representative who was not a health care professional.

54. Despite having received an additional report from Dr. Shemesh, the doctor who had been treating the Plaintiff since 2004 indicating that the Plaintiff had the residual capacity to not lift greater than 5 pounds frequently or repetitively with her left upper extremity and that the Plaintiff was unable to perform overhead tasks, based upon the face to face meeting, surveillance performed on March 31, 2015 and April 1, 2015, and the social media search UNUM concluded that effective as of August 21, 2015, the Plaintiff:

- *Is not "precluded from working on a full time basis performing work that requires: occasional lifting, carrying, pushing and pulling up to 20 pounds; frequent lifting, carrying, pushing and pulling up to 10 pounds; and the use of both upper extremities for reaching, handling and fingering.*

- *Although you have a diagnosis of Depression, you are not seeing any Behavioral Health Specialist nor is any medical provider asserting any restrictions or limitations for this diagnosis…*

- *Was able to perform gainful occupations that preclude her from continuing to receive disability benefits as outlined in the LTD policy,...*

### THE PLAINTIFF APPEALS THE DENIAL OF BENEFITS

55. The Plaintiff timely appealed the denial of benefits.

56. The Plaintiff sent a letter to UNUM supporting her appeal on November 30, 2015 setting forth an explanation of the activities noted in the face to face interview, in the surveillance report and on the social media. Additionally, she advised Unum that contrary to the assertions of

the non-examining doctors for UNUM that she had not regained strength and that she cut down on the medications as she had adverse reactions to medications and she used it wisely. She also told UNUM that she had a diagnosis of PTSD and that she had been seeing a doctor for that condition for over ten years.

57. Thereafter, the Plaintiff asked for additional time to provide UNUM with additional medical information. The Plaintiff provided additional medical information to UNUM on February 12, 2016 including: a) a functional capacity evaluation that sets forth the Plaintiff's physical restrictions and limitations to less than sedentary work; b) an updated report from Dr. Shemesh, agreeing with the analysis set forth in the Functional Capacities Evaluation; c) a report from the Plaintiff's eye doctor concerning the additional visual problems that the Plaintiff was having as a result of a diagnosis of Retinitis Pigmentosa and d) a vocational assessment identifying that the Plaintiff was unable to compete for the jobs identified by UNUM in its denial of the Plaintiff's benefits and setting forth that the Plaintiff was not capable of competing in the job market to earn a wage.

58. UNUM, based upon the information given to it, thereafter asked for a statement from the Plaintiff's treating psychologist. Dr. Cynthia Daugherty authored a report describing the Plaintiff's psychological and emotional state and supported the Plaintiff's inability to work from an emotional viewpoint to the physical impairments from 2004.

59. Thereafter, UNUM requested additional time to review the Plaintiff's Appeal.

**UNUM UPHOLDS ITS DENIAL OF THE PLAINTIFF'S ENTITLEMENT TO ONGOING DISABILITY BENEFITS**

60. Despite the Functional Capacities Evaluation, the updated report from Dr. Shemesh, the vocational assessment having been performed and the letter from the Plaintiff's

treating psychologist, Dr. Daugherty, UNUM on May 18, 2016 completed its appellate review of the Plaintiff's claim and affirmed its denial of the Plaintiff's ongoing entitlement to her disability benefits under the Plan.

61. In that determination, UNUM stated that they had a board certified physician review all of the medical information contained in the file and that such physician determined that the Plaintiff could perform "*seated activities on a full time basis…with the option to change positions from sitting to standing at least every hour if needed.  Lifting no more than 10 pounds bimanually occasionally and no left arm overhead lifting/repetitive work and Occasional lifting of up to 20 pounds bimanually on a part-time basis …*"

62. UNUM further stated that it considered the Functional Capacity Evaluation (FCE) results in reaching its determination, but that the FCE was performed five months after the initial denial and that it was inconsistent with the Plaintiff's observed activities and that during the examination the Plaintiff "*achieved 3 METS on the treadmill which is consistent with seated level work capacity.*"

63. UNUM completely ignored the vocational assessment by Mr. Fitzgibbons, the Plaintiff's evaluator, and the report of the Plaintiff's psychologist regarding the effect of the emotional component on the Plaintiff's employability.

64. The Plaintiff has exhausted her administrative remedies and is entitled to proceed to this appeal pursuant to Section 502 (a) of ERISA.

## FIRST CLAIM FOR RELIEF
## ENFORCEMENT ACTION UNDER 29 U.S.C. SECTION 1132(a)(1)(B)

65. All previous allegations are incorporated herein by reference.

66.     The Employee Retirement Income Security Act, 29 U.S.C. Section 1132 (a)(I)(B) (1994) provides in relevant part as follows:

> *(a)     A civil action may be brought—*
>
> *(1)     by a participant or beneficiary—*
>
> *(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.*

67.     The Plaintiff properly made a claim for benefits under the Plan and was paid benefits under the plan from August 23, 2004 until August 21, 2015 at which time the benefits payable to the Plaintiff were terminated by UNUM.

68.     At the time of termination of the benefits, the Plaintiff had not reached the age of 65 and was entitled to ongoing benefits under the plan.

69.     UNUM failed to consider the Plaintiff's medical evidence showing that the Plaintiff was unable to engage in gainful employment activity and instead relied upon non-medical information in an attempt to support its finding that the Plaintiff could engage in gainful employment on a full time basis.

70.     UNUM did not have substantial evidence to base a determination that the Plaintiff retained or had regained the capability of being engaged in gainful employment as of August 21, 2015 and the determination was punitive in nature for the Plaintiff having suggested in January of 2015 that she would like to have vocational assistance from UNUM in going to law school.

71.     The denial of the ongoing benefits to the Plaintiff under the Plan by UNUM was unreasonable and was not made in good faith but was made based upon an arbitrary and capricious

evaluation of the information presented, is not supported by substantial evidence and is downright unreasonable.

## SECOND CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY PURSUANT TO 29 U.S.C. SECTION 1132 (A)(3)

72. All preceding allegations are incorporated herein by reference.

73. ERISA imposes a statutory duty of care that requires an ERISA Fiduciary to discharge its duties, *"with the care, skill, and diligence that a prudent man would use."* 29 U.S.C. Section 1104 (a)(1)(B).

74. This duty of care obligates a fiduciary to convey complete and accurate information material to the beneficiary's circumstance.

75. Upon information and belief either Continental or UNUM was the Plan Administrator at the time the decision to terminate the Plaintiff's benefits was made in August of 2015.

76. If the fiduciary obligations of administering the Plan had been delegated to UNUM at the time of termination of the benefits to the Plaintiff, UNUM had an inherent conflict of interest as both the Plan Administrator and the plan's insurer and owed to the Plaintiff the duty of utmost loyalty.

77. Either Continental or UNUM was acting as the Plan Administrator at the time of termination of the Plaintiff's benefits with respect to the administration of the Plan.

78. The Plan Administrator breached its obligations of acting for the benefit of the Plaintiff and in the Plaintiff's best interests, its duty of loyalty and to not be conflicted in its evaluation of the Plaintiff's ongoing entitlement to benefits under the Plan.

79. As a result of the Plan Administrator's breach of fiduciary duties the Plaintiff has incurred damages and losses.

80. The defendant's breach of fiduciary duty was a cause of the Plaintiff's damages and losses.

WHEREFORE, the Plaintiff respectfully prays for judgment in her favor and against the Defendants for all matters alleged in this Complaint, for her ongoing disability benefits, attorney fees pursuant to 29 U.S.C. Section 1132(g), interest as permitted by law, expert witness fees, costs and such other and further relief as the Court deems just and proper.

Dated this 7th day of June, 2017.

Turner, Roepke & Mueller, LLC

*/s/  Robert W. Turner*

Robert W. Turner, Esq.
8400 East Crescent Parkway, Suite 600
Greenwood Village, CO 80111
Telephone: 720-528-4424
Facsimile:   720-528-4423
E-Mail: rwt@rwturnerlaw.com
*Co-Counsel for Plaintiff*


ANTERO LAW, LLC

/s/*Zachary P. Mugge*
Zachary P. Mugge, Esq.
1700 Broadway, Suite 640
Denver, CO   80290
Telephone:  720-990-5530
Email: zmugge@anterolaw.com
*Co-Counsel for Plaintiff*

Address of Plaintiff:
3571 South Uravan Street
Aurora, CO  80013